Slip Op. 07-171

## UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————
                                   :

ESSO STANDARD OIL CO. (PR),       :
                                   :

        Plaintiff,             :

                                   :

        v.                 :     Before: Jane A. Restani, Chief Judge

                                   :

UNITED STATES,                   :

                                   :     Court No. 98-09-2814

        Defendant.       :

———————————————————————:

OPINION

[Judgment for Plaintiff under 19 U.S.C. § 1520(c) for return of HMT collected on shipments between insular possessions.]

Dated:  November 20, 2007

Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP (Steven P. Florsheim, Frances P. Hadfield, Robert F. Seely, and Robert B. Silverman) for the plaintiff.

Peter D. Keisler, Assistant Attorney General; Jeanne E. Davidson, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Tara K. Hogan); Richard McManus, Office of Chief Counsel, U.S. Customs & Border Protection, of counsel, for the defendant.

Restani, Chief Judge:  This matter is before the court on cross-motions for summary judgment.  At issue is plaintiff Esso Standard Oil Co. (PR)'s ("Esso") denied request for refund of Harbor Maintenance Taxes ("HMT") illegally collected on cargo shipped between two insular possessions of the United States.

## **FACTS**[*]

Between 1993 and 1997, Esso shipped petroleum products from the U.S. Virgin Islands and unloaded those products at the San Juan port in Puerto Rico.  (PUF ¶ 1.)  When it made entries of those products, Esso declared and paid certain duties and fees, including payment of the HMT.[1]  Customs liquidated all of the relevant entries between 1994 and 1997 without refunding the HMT.  (PUF ¶¶ 4, 17, 27.)  These entries were the subject of requests for refunds (denominated "requests for reliquidation" by Customs), which Esso filed with the San Juan, Puerto Rico port, seeking refund of the HMT paid on the exempt movements.  Two of the "requests for reliquidation" were made more than ninety days after liquidation; one of the requests was made prior to liquidation, which request was denied as premature.[2]  Customs denied the requests made after the protest period expired on the grounds that the assessment of the HMT

---

[*]This factual statement is drawn from defendant's summary of plaintiff's undisputed facts ("PUF").

[1]Plaintiff's First Cause of Action covers HMT declarations and payments it made on sixty-nine entries filed during the period October 3, 1993, through February 6, 1996, and liquidated during the period March 18, 1994, through May 24, 1996.  (DA 120–122.)  ("DA" refers to pages of the  Defendant's Appendix to Motion for Summary Judgment," filed on May 14, 2007.)

Plaintiff's Second Cause of Action covers HMT declarations and payments it made on sixteen entries filed during the time period June 28, 1995, through October 5, 1996, and liquidated during the time period June 21, 1996, through February 28, 1997.  (DA 73.)

Plaintiff's Third Cause of Action covers HMT declarations and payments on two entries: one filed on February 28, 1997, and liquidated June 20, 1997, and the other filed on March 19, 1997, and liquidated on July 7, 1997.  (DA 2.)

[2]Nonetheless, as to the request that was alleged to be premature, there apparently was a "request for review" which postdated the liquidations, some of which occurred while the original "refund/reliquidation request" was pending.

was a mistake of law, which cannot be challenged by a 19 U.S.C. § 1520(c) request for reliquidation.

Following those denials, Esso filed three separate timely protests, pursuant to 19 U.S.C. § 1514(a)(7), of Customs' refusal to reliquidate the entries. (PUF ¶¶ 10, 20, 32.) Those protests were referred to Customs' Commercial Rulings Division for further review, pursuant to 19 C.F.R. § 174.26(b). Customs denied all three protests on March 18, 1998, on the basis that the payment of the HMT and liquidation of the entries without refund of HMT did not meet the criteria for reliquidation under 19 U.S.C.§ 1520 because there was no mistake of fact, clerical error, or other inadvertence not amounting to an error in the construction of the law. (PUF ¶¶ 12, 22, 35, 36.)

In fact, a mistake clearly occurred. At the time the HMT was collected, it was not owed, but Customs, operating from 1993 to 1997 under a regulation and automated procedures that were valid before a 1988 change in law,[3] continued to collect HMT on shipments between insular possessions. Compare 19 C.F.R. 24.24(c) (1992) and 19 C.F.R. 24.24(c) (2007) (listing exemptions from HMT). Thus, the question before the court is whether this mistake falls within the category of mistakes that may be corrected pursuant to former 19 U.S.C. § 1520(c).

---

[3]See Technical & Miscellaneous Revenue Act of 1998, Pub. L. No. 100-647, § 2002(b), 102 Stat. 3342 (Nov. 10, 1998) (adding HMT exemption for waterborne shipments between U.S. insular possessions retroactive to April 1, 1987).

## DISCUSSION

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) because all disputed fees have been paid and plaintiff timely protested the denials of reliquidation and those protests were denied.

Initially, plaintiff argues that the entire protest/reliquidation scheme normally applicable to importers does not apply because it filed requests for refund, pursuant to the direction of Customs officials in Puerto Rico, as soon as the problem of the invalid regulation and procedures was brought to Customs' attention in 1997. In 1997, there was no time limit for filing refund requests under 19 C.F.R. § 24.24(e)(5).[4] The refund regulation, however, even between 1993 and 1997, clearly applied only to quarterly payers such as exporters or passenger carriers. Importers pay duties and fees in connection with entry of merchandise into the United States.[5] They are not quarterly payers and the refund regulation did not, and does not, apply to them.[6]

Advice of an official to file a refund request will not suffice to remove the

---

[4]After numerous parties took advantage of this and the United States Court of Appeals recognized this right for exporters in Swisher Int'l, Inc. v. United States, 205 F.3d 1358, 1360 (Fed. Cir. 2000), the refund regulation was amended in 2001 to add a time limit and to clarify that the normal protest/reliquidation procedures applied to importers.

[5]Under 19 C.F.R. § 24.24(e)(3), the fee accrues at the time of vessel unloading and is to be added to the other fees and duties payable at formal entry.

[6]Although a January 6, 1989, telex from the Assistant Commissioner to Customs officials throughout the country authorized the refund procedure for exports, domestic shipments, foreign trade zone ("FTZ") admissions and passengers, and plaintiff claims it was directed to that telex in 1997, by its own terms the telex did not apply to imports from outside the Customs territory of the United States, such as the U.S. Virgin Islands. The telex, in that respect, was consistent with the refund regulation.

obligation to protest or seek reliquidation.  The procedures applicable to importers are well-known, and a cursory reading of the regulation makes it clear that the refund procedure specified in 19 C.F.R. § 24.24(e)(5) is not applicable.  Whether or not equitable estoppel ever may be applied to toll the statutory time limits at issue here, plaintiff had the opportunity to protect itself by protesting or seeking reliquidation.  Relying on the advice of officials, assuming such advice was to ignore a statute, when such officials had just misapplied another statute for a decade, does not seem appropriate.  There was no contrary regulation and no mandatory procedures which kept plaintiff from following the proper path to either administrative or judicial relief.  Thus, plaintiff's request for relief now based on its simple, not authorized, refund requests on the grounds of equitable estoppel is denied.

Accordingly, the court turns to plaintiff's alternative argument that it made valid "requests for reliquidation" under 19 U.S.C. § 1520(c) when it filed its refund requests and denial of those requests leads to relief under § 1581(a) jurisdiction.  This may very well be the last case in which the court must decide the sometimes excruciatingly difficult question of whether or not a mistake is one of the construction of law under 19 U.S.C. § 1520(c).  The cases are legion and are not easy to harmonize.  See, e.g., Aviall of Tex., Inc. v. United States, 70 F.3d 1248 (Fed. Cir. 1995) (failure to file duty-free forms inadvertence); Executone Info. Sys. v. United States, 96 F.3d 1383 (Fed. Cir. 1996) (failure to file forms for duty-free treatment not inadvertence); Brother Int'l Corp. v. United States, 464 F.3d 1319 (Fed. Cir. 2006) (misclassification based on misunderstanding of the essential character of the merchandise not error of law).  In any case, little of the precedent resembles this odd case.

There have been numerous problems in trying to fit the HMT into Customs law.

See, e.g., Swisher, 205 F.3d at 1359 n.1 (stating that neither statute nor regulation specifies time

for seeking refund of HMT); BMW Mfg. Corp. v. United States, 23 CIT 641, 69 F. Supp. 2d

1355 (1999) (statute unclear as to payer of HMT upon admission to FTZ).  HMT is to be

administered as a Customs duty, 26 U.S.C. § 4462(f)(2), but the statute often leaves little clue as

to how to do this.  Thus, the court returns to the language of the controlling statute.  Specifically,

19 U.S.C. § 1520(c) provided that:

> (c)     Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct –
>
> > (1)     a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in an entry, liquidation, or other customs transaction, when the error . . . is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction. . . .[7]

19 U.S.C. § 1520(c).

Here, all of the statutory conditions for application of § 1520(c) were met.  The

error is manifest from the records.  The HMT is not owed.  The error was brought to the attention

of Customs within one year of liquidation or exaction.  The error is certainly an inadvertence.

See Hambro Auto. Corp. v. United States, 66 CCPA 113, 118, 603 F.2d 850, 854 (1979)

---

[7]Section 520(c) of the Tariff Act of 1930, 19 U.S.C. § 1520(c), was repealed in December 2004 with respect to merchandise entered, or withdrawn from warehouse for consumption, on or after December 18, 2004.  Miscellaneous Trade & Technical Corrections Act of 2004, Pub. L. No. 108-249, Title II, § 2105, 118 Stat. 2434, 2598 (Dec. 3, 2004).  All entries in this action pre-date the effective date of the repeal.

(inadvertence is an oversight, an involuntary accident).  Customs surely did not intend to keep an out-of-date regulation on the books and plaintiff clearly did not want to pay tax not owed.  No judgment about the law to be applied or its interpretation was made.  Customs slipped up by not implementing the statute, and plaintiff did not discover its slipup.  This is clearly a case of inadvertence.  There is, of course, eventually an error of law in all of this, as there is in every § 1520(c) case, even the iconic <u>United States v. C.J. Tower & Sons of Buffalo, Inc.</u>, 61 CCPA 90, 499 F.2d 1277 (1974) (error of fact led to error in classification under tariff laws).  Here, the tax was not legally owed, but to the court this is not an error in the "construction of the law."  No one construed the law.  The statute was clear.  Customs simply failed to implement the statute by regulation, policy change, software amendments, direction to the port or otherwise.

The court is aware of the language in <u>Century Importers, Inc. v. United States</u>, 205 F.3d 1308, 1313 (Fed. Cir. 2000), and similar cases that ignorance of the law is not a correctable inadvertence under § 1520.  The court is also aware that the Federal Circuit in <u>Ford Motor Co. v. United States</u>, 157 F.3d 849 (Fed. Cir. 1998), stated that "an error in the construction of a law" is the same as a "mistake of law".  <u>Id.</u> at 859.  These cases, of course, involve very different fact scenarios from the one at hand and defendant cites no case denying § 1520 relief where Customs itself was so ignorant of the law that it could not provide a proper regulation or approve adequate software for years.

This is not a case where parties argue about the intricacies of classification and valuation of merchandise under the tariff laws.  Such questions were likely the target of the "construction of law" exception.  <u>See, e.g.</u>, <u>Hambro</u>, 66 CCPA at 113, 603 F.2d at 850.  This is

simply a big mistake by both Customs and the importer in failing to note the change in law and

act accordingly.  In this case, however, the onus must fall on Customs.  It is simply inexcusable

for the master of the Customs laws to fail for almost a decade to amend the applicable regulation

that governs the conduct of port officials in collecting HMT and to continue to authorize

incorrect software.[8]  Plaintiff had no choice but to enter its merchandise incorrectly given the

automated entry system, the regulation, and the position of the port officials who kept collecting

the HMT for this entire period.  No one construed the law.  Customs just did not implement the

law it clearly knew was applicable and it took no steps which would permit the law to function as

it should.  This is exactly the type of non-arguable blunder § 1520(c) should be allowed to fix.

The judicial gloss placed upon § 1520(c) to resolve very different types of disputes over the years

should not defeat the clear language of the statute.  As plaintiff timely sought reliquidation as to

most of its claims, such reliquidation requests should be granted.

---

[8]The Automatic Broker Interface ("ABI") entry filing system is implemented through
software monitored and regulated by Customs.  The software is licensed and sold to brokers to
make paperless entries.  (Aff. of Roberto Mastrapa, Ex. 2 to Pl.'s Mot. for Summ. J.)  Defendant
does not appear to dispute that the ABI software was not amended to recognize the exemption for
insular possessions until May 1997 when Customs authorized the change.  (See generally Ex. 1
to Pl.'s Mot. for Summ. J.)  The website of United States Customs and Border Protection
("CBP") explains that "The Automatic Broker Interface is an integral part of ACS [the
Automated Commercial System] that permits qualified participants to file import data
electronically with Customs."  Automatic Broker Interface (ABI) and Contact Information,
http://www.cbp.gov/xp/cgov/import/operations_support/automated_systems/acs/acs_abi_contact
_info.xml.  CBP provides client representatives to serve as technical advisors and sends ABI
participants notices of changes and enhancements to the software.

Accordingly, plaintiff's motion for summary judgment is granted, at least in part, and defendant's motion is denied.  The court will not enter final judgment at this time, as it is unclear from the papers with respect to the so called "premature protest" whether there was a timely post-liquidation equivalent of a protest or request for reliquidation in place within one year of liquidation.  The parties shall review this matter and plaintiff shall submit a proposed judgment with twenty days hereof.  If defendant disagrees, it may respond within eleven days thereafter.

_____/s/ Jane A. Restani_____
Jane A. Restani
Chief Judge

Dated this 20th day of November, 2007.
New York, New York.

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____   By: _____
                                                            Deputy Clerk